FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ . . 2 2007 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ADRIAN A. GREAVES,

Petitioner,

-against-

WILLIAM BROWN,
*Superintendent of Eastern Correctional Facility,*

Respondent.

---

06 CV 3524 (ARR)

NOT FOR ELECTRONIC OR PRINT PUBLICATION

OPINION AND ORDER

ROSS, United States District Judge:

Pro se petitioner Adrian Greaves filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on July 10, 2006. Petitioner seeks habeas corpus relief on the grounds that: (1) the trial court refused to reopen his suppression hearing; and (2) he was denied the effective assistance of appellate counsel. For the reasons set forth below, the court dismisses his petition.

**BACKGROUND**

Following a jury trial in New York State Supreme Court, Kings County, petitioner was convicted of second degree (felony) murder for his participation in the murder of Betty Hudgins. At trial the state presented evidence that Carry Greaves (petitioner's brother), Dwight Taylor, and petitioner went to Hudgins's apartment to rob her. While petitioner held Hudgins down, Taylor and Carry Greaves gathered her belongings and then either Taylor stabbed her with a meat cleaver or Carry stabbed her with a knife. Hudgins, her femoral artery perforated, died as a result of her wounds. Taylor and petitioner were stopped by police as they walked away from the apartment with a duffel bag and a ripped bag holding a television set.

*Pre-Trial Suppression Hearing*

Before trial the court held a combined hearing pursuant to Dunaway v. New York, 442 U.S. 200 (1979), Mapp v. Ohio, 367 U.S. 643 (1961), and People v. Huntley, 15 N.Y.2d 72 (N.Y. 1965), on Taylor's, Carry Greaves's, and petitioner's various motions to suppress. At the hearing, held in November 1995, petitioner was represented by Jose Muniz. Officer William Van Pelt, Officer John O'Dwyer, Detective Terence Murnane, Detective Kevin McCann, and Detective Victor Howell testified at the hearing as prosecution witnesses.

Petitioner's lawyer called a single witness, Officer Enrique Rivera, stating that his client had advised him that "Rivera engaged in coercive tactics at the time of the arrest, and then later on during the early morning hours at the precinct." (Hr'g Tr. 487.) Rivera denied saying anything to Taylor or petitioner while in the patrol car, denied saying he was going to beat them or conduct "another Rodney King beating," and denied visiting with them back at the precinct. (Hr'g Tr. 490-99.) Petitioner's lawyer, after conversing with Taylor,[1] asked Rivera if he ever smacked Taylor or hit him with his flashlight, all of which Rivera denied. (Hr'g Tr. 499.) None of the three defendants testified at the hearing. The court, by written decision dated December 18, 1995, denied the defendants' suppression motions.

*Renewed Suppression Motion*

Taylor subsequently pleaded guilty and agreed to cooperate with the People, testifying against Carry Greaves and petitioner at their respective trials. At Carry Greaves's trial, Taylor testified that Officer Rivera physically and verbally abused Taylor and petitioner and perhaps

[1] Taylor was not represented by Muniz, petitioner's counsel, but Taylor's counsel could not attend this portion of the hearing and so, with Taylor's consent, his counsel arranged to have Muniz handle the questioning of Officer Rivera. (Hr'g Tr. 489-90.)

failed to give them Miranda warnings. (Tr. 1192, 1200-04.) On March 15, 1996, Jeffrey Schwartz replaced Muniz as petitioner's trial counsel. (Tr. 1197). Petitioner's trial commenced on May 8, 1996. Taylor was scheduled to testify on May 29, 1996. The night before, petitioner's trial counsel read Taylor's testimony in Carry Greaves's trial. (Tr. 1205.) On May 29, 1996, on the basis of Taylor's prior testimony, petitioner's trial counsel moved to reopen the Huntley hearing. (Tr. 1158, 1191-1214.) Trial counsel claimed that petitioner had asked Muniz to testify at the suppression hearing but Muniz had advised against it. (Tr. 1226-27.)

The trial court denied the motion. (Tr. 1231.) In denying the motion to reopen the Huntley hearing, the trial court stated that petitioner would be able to cross-examine Taylor, testify himself, if he chose, and "submit the voluntariness of the confession to the jury." (Tr. 1216, 1218-19.) The trial court, upon petitioner's request, (Tr. 1620), charged the jury on the voluntariness of the confession. (Tr. 1788-93.)

*Petitioner's Trial*

At petitioner's trial, Taylor testified that Officer Rivera pulled out his gun when confronting him and petitioner as they walked from the crime scene, (Tr. 1330), that Officer Van Pelt also had his gun out (Tr. 1331), and that the officers told Taylor and petitioner to get on the ground and then Rivera smacked them, called them "niggers," and said this was going to be another Rodney King beating. (Tr. 1331-32, 1385-90.) According to Taylor, Van Pelt told Rivera to put them in the car and, once in the car, Rivera hit Taylor with a flashlight and asked where they got the items in the bags. (Tr. 1390-92.) Taylor and petitioner told them there was an injured woman down the block and then directed them to Hudgins's apartment. (Tr. 1333-34.) Taylor also testified that once at the precinct he heard, but could not see, Rivera smacking

petitioner. (Tr. 1339-40, 1396, 1570, 1572-73.)

At trial petitioner called Officer Rivera as a witness. (Tr. 1584.) Rivera denied doing the things Taylor said he had done. (1588-1610.)

In summation, petitioner discussed Taylor's testimony of police misconduct (Tr. 1637-49), and the voluntariness and reliability of petitioner's confession. (Tr. 1678-79, 1695, 1713.) The prosecutor also discussed Rivera's misconduct and the voluntariness of petitioner's confession in his summation. (Tr. 1743-48.)

Petitioner was convicted of second degree (felony) murder. (Tr. 1829.) On June 18, 1996, he was sentenced to a term of imprisonment of twenty years to life. (Sentencing Hr'g 19-20.)

*Post-Trial Proceedings*

On direct appeal, petitioner argued that the trial court had erred by denying his motion to reopen the pretrial suppression hearing. Petitioner's appellate counsel later sought permission to file a supplemental brief to argue that trial counsel had been ineffective for failing to fully preserve the motion to reopen the suppression hearings and for failing to move so in a timely manner.

By Decision and Order dated November 4, 2004, the Appellate Division, Second Department, denied petitioner's motion for leave to file a supplemental brief.

By Opinion dated November 29, 2004, the Appellate Division, Second Department, affirmed the conviction and held that the claim was, "in part, unpreserved for appellate review." People v. Greaves, 12 A.D.3d 690 (N.Y. App. Div. 2d Dep't 2004). The court went on to state:

> The defendant's motion, made during the trial, was to reopen only

> the Huntley hearing, and was based on the defense counsel's contention that he had recently learned of certain new evidence pertaining to the circumstances of the defendant's arrest which warranted the suppression of the defendant's statements. In any event, the Supreme Court providently exercised its discretion in denying the defendant's motion to reopen the suppression hearing, as the defendant is presumed to have knowledge of the evidence relating to the circumstances of his arrest and the defense counsel did not adequately explain why the motion could not have been made sooner.

People v. Greaves, 12 A.D.3d 690 (N.Y. App. Div. 2d Dep't 2004) (internal citations omitted).

By letter dated January 11, 2005, petitioner's appellate counsel sought leave to appeal to the New York Court of Appeals, arguing both that the trial court had erred by not reopening the suppression hearing and that trial counsel had been ineffective for failing to timely move to reopen the suppression hearing. On January 17, 2005, the Court of Appeals denied leave to appeal. People v. Greaves, 4 N.Y.3d 763 (2005).

On September 1, 2005, petitioner sought a writ of error coram nobis on the ground of ineffective assistance of appellate counsel, arguing that his appellate counsel was ineffective for the same reasons he claims in the instant petition. By Decision and Order dated December 12, 2005, the Appellate Division, Second Department, denied the application, stating simply, "The appellant has failed to establish that he was denied the effective assistance of appellate counsel." People v. Greaves, 24 A.D.3d 569 (N.Y. App. Div. 2d Dep't 2005). On March 31, 2006, the New York Court of Appeals denied petitioner leave to appeal. People v. Greaves, 6 N.Y.3d 834 (2006).

Greaves then filed the instant petition, arguing that he is entitled to habeas corpus relief because (1) the trial court refused to reopen the suppression hearing; and (2) he was denied the

effective assistance of appellate counsel based on appellate counsel's failure to argue (a) that the trial court should have sua sponte instructed the jury on the "nonslayer" affirmative defense to felony murder and (b) that trial counsel had been ineffective for (i) failing to request a jury instruction on the "nonslayer" defense and (ii) failing to timely move to reopen the suppression hearing.[2]

## DISCUSSION

### I. AEDPA Standard of Review

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[2] Respondent construed the instant petition to raise the predicates for the ineffective appellate counsel claim as independent claims in themselves. Also, respondent neglected to see in the petition a claim based on the trial court's refusal to reopen the suppression hearing, addressing this issue only in the context of trial counsel's ineffectiveness for failing to timely move to reopen the hearing.

Greaves has clarified in his reply that his petition for federal habeas relief raises the claims as the court has described them. Although this reduces the number of claims pending before this court, it also means that all the claims have been exhausted. In any event, as the discussion below makes clear, even if petitioner had argued these as independent claims in this court, petitioner would not be entitled to habeas relief.

The statutory language "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court ... should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. In determining whether an application was objectively unreasonable, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that, although "[s]ome increment of incorrectness beyond error is required[,] . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted).

This deferential review of state court judgments is available only when the federal claim has been "adjudicated on the merits" by the state court. Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001). If there is no such adjudication, the deferential standard does not apply, and "we apply the pre-AEDPA standards, and review de novo the state court disposition of the petitioner's federal constitutional claims." Id. (citing Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001)). For the purposes of AEDPA, a state court "adjudicates" a petitioner's federal

constitutional claims "on the merits" whenever "it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). When a state court does so, a federal habeas court must defer in the manner prescribed by AEDPA to the state court's decision on the federal claim, even if the state court does not explicitly refer to either the federal claim or relevant federal case law. Id. To determine whether a state court has disposed of a claim on the merits, the court considers: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." Id. at 314 (quoting Mercadel v. Cain, 179 F.3d 271, 274 (5th Cir. 1999)). In addition, a "conclusive presumption" that the state court decision "rest[s] on the merits of the federal claim" applies to decisions "fairly appearing to rest primarily on federal law or to be interwoven with federal law, . . . [a]bsent a clear and express statement of reliance on a state procedural bar." Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (holding that presumption of Harris v. Reed, 489 U.S. 255, 262-63 (1989), applies equally to both AEDPA-deference and procedural-bar determinations).

## II. Petitioner's Claims

*1. Trial Court's Denial of Motion to Reopen Suppression Hearing*

Petitioner's claim that he is entitled to habeas relief based on the trial court's denial of his motion to reopen the suppression hearing is without merit.[3]

---

[3] Because petitioner moved at trial only to reopen the Huntley hearing, but not the Mapp aspect of the combined hearing, this claim would be partially procedurally barred despite the Appellate Division's ruling "[i]n any event" on the merits. See Green v. Travis, 414 F.3d 288,

In the first place, petitioner's claim presents a matter of state law not cognizable on federal habeas review. See 28 U.S.C. § 2254(a) (Habeas relief is only available for violations of "the Constitution or laws or treaties of the United States."); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Tirado v. Walsh, 168 F. Supp. 2d 162, 170-71 (S.D.N.Y. 2001) (holding that claim that trial court improperly reopened suppression hearing "was clearly a matter of state law" not cognizable on federal habeas review and finding no Supreme Court decision regarding federal law on this issue).[4]

Moreover, the trial court's decision was proper under New York law, as the Appellate Division held on petitioner's direct appeal. Under New York law,

> If after a pre-trial determination and denial of the motion the court is satisfied, upon a showing by the defendant, that additional pertinent facts have been discovered by the defendant which he could not have discovered with reasonable diligence before the determination of the motion, it may permit him to renew the motion before trial or, if such was not possible owing to the time of the discovery of the alleged new facts, during trial.

N.Y. Crim. Proc. § 710.40(4). In applying this procedural rule, New York law employs a general presumption that a defendant "know[s] the circumstances of his or her own arrest and therefore is

---

294 (2d Cir. 2005); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 n.4 (2d Cir. 2000). However, in failing to address this claim directly, respondent failed to assert the procedural bar with respect to this claim. See Jimenez v. Walker, 458 F.3d 130, 140 n.8 (2d Cir. 2006) ("Because the existence of an adequate and independent procedural bar is not jurisdictional in the habeas context, a federal court is not required to raise it sua sponte; rather, it is a defense that the State is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter.") (internal quotations omitted)).

[4] See also Vasquez v. Kelly, No. 98 Civ. 352, 2004 WL 1574556, at *5-*6 (W.D.N.Y. June 25, 2004) (applying Tirado to claim regarding trial court's refusal to reopen suppression hearing).

capable of eliciting evidence of those circumstances at a pretrial hearing." People v. Velez, 829 N.Y.S.2d 209, 2007 N.Y. App. Div. LEXIS 1455, at *9 (App. Div. 2d Dep't Feb. 6, 2007) (collecting cases) (finding that trial court should have reopened suppression hearing since defendant offered new facts beyond the scope of his knowledge of the circumstances of his arrest). Thus, "motions to re-open suppression hearings generally are denied where the new facts proffered go only to the circumstances surrounding the defendant's arrest." Id.

The facts in this case do not disturb this presumption. The basis for petitioner's motion to reopen the hearing was Taylor's trial testimony, yet this did not present any "additional pertinent facts" not previously known by petitioner. As the record of the pre-trial hearing indicates, petitioner and Taylor informed counsel of the circumstances of their arrest. That information formed the basis of counsel's examination of Officer Rivera regarding police misconduct. Since petitioner was at the time of the hearing aware of the circumstances of his arrest, the trial court properly denied his request to reopen the hearing. See People v. Turner, 49 N.Y.2d 925, 927 (N.Y. 1980) (affirming denial of midtrial motion to suppress because defendant was aware of facts prior to trial and could not claim "previous unawareness" to justify granting motion); see also People v. Meachem, 288 A.D.2d 162 (N.Y. App. Div. 1st Dep't 2001) ("Moreover, defendant's moving papers in support of his suppression motion indicate that defendant apprised his then-counsel of the facts in question.") Taylor's testimony does not itself constitute "additional pertinent facts" subsequently discovered regarding the circumstances of their arrest. See People v. Knowles, 12 A.D.3d 939, 940 (N.Y. App. Div. 3d Dep't 2004) (subsequent discovery of grand jury minutes does not constitute additional, pertinent facts since defendant was surely aware of circumstances surrounding his arrest).

The court further notes that federal law in this Circuit is similar to New York law on this issue. See United States v. Oquendo, No. 03 Crim. 502, 2005 U.S. Dist. LEXIS 19779, at *1 (S.D.N.Y. Sep. 8, 2005) (denying motion to reopen because evidence in defendant's possession at time of hearing is not "new"); see also United States v. Nezaj, 668 F. Supp. 330, 332 (S.D.N.Y. 1987) ("Among the factors the court will consider is whether the moving party has proffered newly discovered evidence that was unknown to the party, and could not through due diligence reasonably have been discovered by the party, at the time of the original hearing.").

For these reasons, this claim must be dismissed.

*2. Ineffective Assistance of Appellate Counsel*

The two-prong Strickland test applies to claims of ineffective assistance of appellate counsel as well as of trial counsel. See Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001) (citing Evitts v. Lucey, 469 U.S. 387, 396-97 (1985)). "[I]t is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

A habeas "petitioner may establish constitutionally inadequate performance if he shows that [appellate] counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F.3d at 533. However, "[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a] [p]etitioner [i]s entitled." Aparicio, 269 F.3d at 99 (internal quotation marks and citations omitted). As for the second prong of Strickland in the appellate counsel context, petitioner must establish that "there was a reasonable probability that [his] claim would have

been successful before the [state's highest court]." Mayo, 13 F.3d at 534.

In this case, appellate counsel argued that the trial court erroneously denied the motion to reopen the suppression hearing. The arguments petitioner now wishes appellate counsel had raised are meritless and neither significant nor obvious, and so counsel's performance was not constitutionally deficient. Appellate counsel cannot be faulted for not arguing that the trial court should have sua sponte instructed the jury on an affirmative defense to which petitioner was not entitled. And appellate counsel cannot be faulted for choosing not to argue on appeal the ineffective assistance of trial counsel when trial counsel was not ineffective. Petitioner cannot establish a reasonable probability that the state courts would have found his claims meritorious. The Appellate Division's adjudication of this claim, which, though brief, is still entitled to AEDPA deference, was neither contrary to, nor an unreasonable application of, clearly established federal law. For these reasons, the court dismisses this habeas claim.

*a) Trial Court's Failure to Instruct Jury on Nonslayer Defense*

Petitioner's claim that appellate counsel was ineffective for failing to argue that the trial court should have sua sponte instructed the jury on the "nonslayer" affirmative defense to felony murder is without merit.

Under New York law, a defendant has an affirmative defense to the charge of felony murder if the defendant:

> (a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and
> (b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and
> (c) Had no reasonable ground to believe that any other participant

> was armed with such a weapon, instrument, article or substance; and
> (d) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

N.Y. Penal Law § 125.25(3). "A court may refuse to submit the defense to the jury . . . if no reasonable view of the properly admitted evidence would permit the jury to find that the defendant had met his burden on each and every element." Thompson v. Kelly, 22 F.3d 450, 453 (2d Cir. 1994).

Petitioner argues that he was entitled to an instruction on this defense–even in the absence of a request from counsel–because, although he knew Taylor had a meat cleaver, the evidence established that the murder weapon was Carry's knife and petitioner had no reasonable ground to believe Carry was so armed.

At trial, Detective Victor Howell read into evidence the statement petitioner had made to him when questioned at the precinct the day of his arrest. (Tr. 679-81.) In the statement, petitioner said he saw Taylor put a meat cleaver in his pocket and that, as petitioner held Hudgins down, Taylor cut her once with the meat cleaver. (Tr. 680.)

Other evidence at trial, however, suggested that Carry Greaves used a knife to stab Hudgins. Taylor testified that he had a meat cleaver and their plan was for him to put the cleaver to Carry Greaves's back to make it look like a stick up at gunpoint, or to wave the cleaver to scare Hudgins. (Tr. 1270, 1284, 1358-59, 1367.) Events did not unfold in accordance with their plan. (Tr. 1290-91.) Taylor further testified that as petitioner held Hudgins down Carry Greaves took a switchblade knife out of his pocket and stabbed her. (Tr. 1301-02, 1312-15.) According to Taylor, the meat cleaver never touched Hudgins. (Tr. 1415-16.) Taylor testified that he and

petitioner asked Carry why he stabbed her. (Tr. 1316, 1368-69.) Dr. Stephen DeRoux, a forensic pathologist who performed an autopsy on Hudgins, testified that in his opinion the three stab wounds on her legs could not have been caused by a meat cleaver, but rather were likely caused by a knife. (Tr. 535.)

The trial court initially charged the jurors that they must find that Carry Greaves caused Hudgins's death, (Tr. 1810-11), but later corrected this instruction and said this element would be satisfied if they found that any participant in the robbery caused her death. (Tr. 1816.)

As the preceding summary of the trial makes clear, petitioner was not entitled to a jury instruction on the affirmative defense. No reasonable view of the evidence would have permitted the jury to find by a preponderance of the evidence that petitioner had no reasonable ground to believe that *any other participant was armed* with a deadly weapon or instrument readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public, to wit, a meat cleaver carried by fellow participant Taylor. See, e.g., Thompson, 22 F.3d at 454 (affirming district court's finding that a knife "'approximately six or seven inches in length and an inch in width' is a deadly weapon under New York law"). This is so even if the jury found, contrary to petitioner's confession but in accordance with the autopsy evidence, that the murder weapon was Carry's knife, not Taylor's meat cleaver. See, e.g., People v. Jeanty, 702 N.Y.S.2d 194, 198 (App. Div. 3d Dep't 2000) (defendant failed to prove third element of defense where defendant knew participant had a gun even though victim died by asphyxiation).

Petitioner was, therefore, not entitled to a jury charge on the affirmative defense. As a result, petitioner's current claim, that appellate counsel was ineffective for failing to argue that the trial court should have given this instruction, is without merit and must be dismissed.

*b) Trial Counsel Was Ineffective*

Petitioner claims that appellate counsel should have argued that trial counsel had been ineffective for two reasons, neither of which has any merit.

*i) Failing to Request a Jury Instruction on Nonslayer Defense*

As discussed above with respect to the claim that appellate counsel should have argued that the trial court failed to instruct the jury on the nonslayer affirmative defense, petitioner was not entitled to such an instruction. Therefore, trial counsel cannot be considered ineffective for failing to request it and, moreover, appellate counsel cannot be ineffective for failing to argue that trial counsel had been ineffective on this basis.

*ii) Failing to Timely Move to Reopen Suppression Hearing*

Similarly, as discussed above with respect to the claim that the trial court should have granted his motion to reopen the suppression hearing, under New York law petitioner was not entitled to a renewal of his suppression motion because there was no subsequent discovery of "additional pertinent facts." Therefore, trial counsel cannot be considered ineffective for not moving sooner to reopen the hearing. Nor can appellate counsel be considered ineffective for failing to argue that trial counsel had been ineffective on this basis.

For these reasons, petitioner's claim of ineffective assistance of appellate counsel must be dismissed.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2) (1996), no certificate of appealability will be granted. The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

/S/

Allyne R. Ross
United States District Judge

Dated: April 25, 2007
Brooklyn, New York

SERVICE LIST:

Pro Se Petitioner
Adrian A. Greaves
#96A4289
Eastern Correctional Facility
PO Box 338
Napanoch, NY 12458-0338

Respondent's Attorney
Joyce Slevin
Kings County District Attorney Office
350 Jay Street
Brooklyn, NY 11201-2908